IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOMINIQUE HENDERSON, | : | CIVIL ACTION |
| as administratrix of the estate | : | NO. 12-2602 |
| of Yvette Henderson, deceased | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA | : | |

O'NEILL, J.                                                                                          JULY 23, 2012

## MEMORANDUM

Plaintiff Dominique Henderson as administratrix of the estate of Yvette Henderson and in her own right as daughter of the decedent filed this action against defendant City of Philadelphia seeking damages for claims arising out of her mother's death. Plaintiff asserts claims under the Pennsylvania Wrongful Death Act, 42 Pa. Cons. Stat. § 8301, the Pennsylvania Survival Act, 42 Pa. Cons. Stat. § 8302, and 42 U.S.C. § 1983. Now before me is the City's motion to dismiss plaintiff's amended complaint. For the reasons that follow I will grant the City's motion.

## BACKGROUND

The facts of the instant case viewed in the light most favorable to plaintiff are as follows. On October 31, 2010, emergency medical technicians employed by the City of Philadelphia came to 2531 West Harold Street, Philadelphia, PA in response to a 911 call. Am. Compl. ¶ 10. Plaintiff's mother was experiencing "difficulty breathing." Id. at ¶¶ 1, 10.[1] While attempting to carry her out of the home "in and/or on a bag" the EMTs dropped her on her head. Id. at ¶ 10-11. Plaintiff's mother was then taken to Temple University Hospital where she died of a subdural hematoma. Id. at ¶ 2, 13. Plaintiff avers that when the EMTs dropped her mother they

---

[1] Paragraph 15 appears to include an allegation that plaintiff's mother had been shot but there is no allegation that this is why the ambulance was summoned.

aggravated her mother's "precarious condition," further causing pain and suffering and ultimately her mother's death at 11:45 am. <u>Id.</u> at ¶¶ 12-14. Plaintiff contends that the EMTs:

> (a) fail[ed] to properly and safely transport the Plaintiff's decedent; (b) fail[ed] to have adequate form of transport for Plaintiff's decedent; (c) fail[ed] to properly secure Plaintiff's decedent; (d) fail[ed] to properly train its personnel in the securing and transport of patients; (e) fail[ed] to properly supervise the transport of patients; (f) fail[ed] to promptly respond to a clearly enunciated medical emergency; . . . (h) fail[ed] to perform proper tests, review the patient's history and to determine appropriate care; (i) fail[ed] to perform a complete and thorough evaluation of the patient's condition prior to transport; (j) fail[ed] to perform the procedures properly and in a competent manner so as to prevent the plaintiff's decedent from falling to the ground; (k) fail[ed] to have an adequate amount of personnel care for and transport the Plaintiff's decedent; (l) fail[ed] to properly diagnose the nature and/or seriousness of Plaintiff's [decedent's] problem and act in accordance with reasonable standards of care; (m) [held] out expertise which induced Plaintiff to believe that adequate and/or proper care would be provided when, in fact, adequate and/or proper and/or reasonable care were not available or were not provided; (n) fail[ed] to maintain and keep adequate records, reports, and/or notes so as to allow proper treatment and/or follow-up by its employees, agents and/or servants.

<u>Id.</u> at ¶ 17.

Plaintiff seeks recovery

> including, but not limited to damages for all hospital, medical, funeral burial and estate administration expenses, incurred, loss of support and contribution which the family would have received from the decedent from the time of her death for the duration of [her] work life expectancy; compensation for the pecuniary value of the services, society, and comfort [she] would have given to her children, mother, father, step-mother, sisters and remaining family had [she] lived; compensation for the loss of services the decedent would have contributed to all family listed above and also for the net amount of money the decedent would have earned from the date of her death and would have earned between the date and the end of her work life expectancy; compensation for the mental and physical pain and suffering and inconvenience the decedent

>      endured from the moment of [her] injury to the moment of her
>      death.

Id. at ¶ 5.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556. The Court of Appeals has made clear that after Ashcroft v. Iqbal, 129 S. Ct. 1937, 1955 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 129 S. Ct. at 1949. The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal: "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's

well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 210-11, quoting Iqbal, 129 S. Ct. at 1950. The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949.

## DISCUSSION

I.  **Wrongful Death and Survival Act Claims**

Plaintiff's amended complaint sets forth a wrongful death claim on behalf of herself and her mother's mother. Am. Compl. ¶ 19. It also sets forth a claim pursuant to the Survival Act on behalf of her mother's estate. Id. at ¶ 27. These "claims are not substantive causes of action; rather, they provide a means of recovery for unlawful conduct that results in death." Sullivan v. Warminster Twp., No. 07-4447, 2010 WL 2164520, at *6 (E.D. Pa. May 27, 2010). "[W]rongful death and survival actions sound in tort and are governed by the [Pennsylvania Political Subdivision] Tort Claims Act." Bornstad ex rel. Estate of Bornstad v. Honey Brook Twp., No. 03-3822, 2005 WL 2212359, at *22, n.53 (E.D. Pa. Sept. 9, 2005). I will dismiss plaintiff's wrongful death and survival claims because they do not fall within one of the exceptions to the City's immunity from certain state law claims provided by the Tort Claims Act. 42 Pa. Cons. Stat. §§ 8541 et seq.

The Tort Claims Act states in relevant part "[e]xcept as otherwise provided . . . no local

agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons. Stat. § 8541. Exceptions to this immunity include certain statutorily enumerated negligence claims, i.e.: vehicle liability; the care, custody and control of personal property; the care, custody and control of real property; trees; traffic controls and street lighting; utility service facilities; streets; sidewalks; and the care, custody and control of animals. 42 Pa. Cons. Stat. § 8542(b). In order for plaintiff to recover on her wrongful death and/or survival claims, her amended complaint must allege: (1) that the decedent's injury was "caused by the negligence of the local agency or its employees" and (2) that her claims "fall within one of the eight exceptions listed in § 8542." Robey v. Chester Cnty, 946 F. Supp. 333, 338 (E.D. Pa. 1996)  The facts alleged in plaintiff's amended complaint do not fall under one of these exceptions.

     A motion to dismiss will typically be granted with leave to amend "unless [amendment] would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). I will not grant plaintiff leave to amend her wrongful death and survival act claims because her allegations regarding the EMTs' actions cannot be amended to establish one of the exceptions to the Tort Claims Act. See Torres v. City of Allentown, No. 07-1934, 2008 WL 2600314, at * 6 (E.D. Pa. June 30, 2008) (granting motion to dismiss under Torts Claims Act without leave to amend where conduct alleged did not fall within an enumerated exception).

**II.**    **§ 1983 Claim**

     I will dismiss plaintiff's § 1983 claim because the City is not constitutionally obligated to provide rescue services or to ensure the competency of rescue services that it has chosen to provide and because plaintiff has not pled that at the time of the incident in question the EMTs

were acting pursuant to a policy or custom of the City.  To state a claim against the City under § 1983, plaintiff must plead both that the EMTs' actions deprived her mother of a right, privilege, or immunity secured by the Constitution and laws of the United States and that the EMTs were acting pursuant to a law, policy or custom of the City.  § 42 U.S.C. § 1983.[2]

First, "[t]o make out a prima facie case under § 1983, the plaintiff must demonstrate that a person, acting under color of law, deprived [her mother] of a federal right.'" Berg v. Cnty. of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000).  Even if all of the allegations set forth in plaintiff's amended complaint are taken as true, the facts alleged do not amount to a deprivation of a constitutional right.  The Due Process Clause "forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989).  In Brown v. Pennsylvania, the Court of Appeals looked to the Supreme Court's decision in Deshaney when it refused to impose liability on the City of Philadelphia for the actions of EMTs employed by the City in their attempt to rescue a choking infant.  Brown v. Pa. Dep't of Health Emergency Med. Servs. Training. Inst, 318 F.3d 473, 478 (3d Cir. 2003).  The Court held that "there is no federal constitutional right to rescue services, competent or otherwise.  Moreover, because the Due Process Clause does not require the State to provide rescue services, courts cannot interpret that clause so as to place an affirmative obligation on the

---

[2] § 1983 states: "[e]very person who, under color of any statute ordinance regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

State to provide competent rescue services if it chooses to provide them." Id. at 476.  Further, "the Due Process Clause is not implicated by an official's negligent act." Id. at 479, citing Daniels v. Williams, 474 U.S. 327, 328 (1986).  When applied to the facts of the instant case, the holding of the Court in Brown appears to preclude plaintiff from making out a claim for recovery under § 1983 because her mother did not have a constitutional right to receive competent emergency medical services.

      The Court of Appeals, however, recognizes two exceptions to the general rule adopted in DeShaney: (1) the special relationship exception applied "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs," and (2) the state-created danger exception applied "when the state, through some affirmative conduct, places the individual in a position of danger." Brown, 318 F.3d at 478; citing DeShaney, 489 U.S. at 200. The "special relationship" exception does not apply here because the amended complaint does not allege that plaintiff's mother was at any time under the custody of the City.  See Brown, 318 F.3d at 481.  The state-created danger exception, however, requires further analysis.  The Court of Appeals has held:

> [T]hat cases predicating liability on a state-created danger theory have four common elements: (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor[s] acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; and (4) the state actors used their authority to create an opportunity that otherwise would not have existed [to cause harm].

Kneipp v. Tedder, 95 F.3d 1199, 1208 (3d Cir. 1996).  In cases where the state actor is acting with urgency a "shocks the conscience" standard rather than a "willful disregard" standard

applies. Brown, 318 F.3d at 480 (holding that the "'conscience shocking' standard applies to the actions of emergency medical personnel–who likewise have little time for reflection, typically making decisions in haste and under pressure"). Plaintiff's amended complaint does not allege that the EMTs were acting willfully, intentionally or in a conscience shocking manner. Because plaintiff's allegations do not support a finding that the state-created danger exception should apply she has not sufficiently pled a deprivation of her mother's constitutional rights for liability to attach under § 1983.

Second, even if plaintiff could amend her amended complaint to allege a sufficient deprivation of her rights, she still must allege that the EMTs at the time of the incident were acting in accordance with a policy or custom of the City. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."). Liability exists "when execution of a government's policy or custom . . . inflicts the injury." Id. Moreover, "[a] plaintiff bears the additional burden of proving that the municipal practice was the proximate cause of the injuries suffered. To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).

Rather than allege that a city policy inflicted the injury set forth in the amended complaint, plaintiff instead claims that the injury at issue arose from the EMTs' "refus[al] to enforce the rules, policies and regulations of the Commonwealth and City of Philadelphia." Compl. at ¶ 32. Absent allegations that the City's EMTs had a custom of not following the City's rules and regulations and that such custom was a proximate cause of plaintiff's mother's

injury, there can be no basis for liability under Monell.

I will grant plaintiff leave to amend her § 1983 claim to the extent that she can allege sufficient facts to support a claim that the EMTs' conduct "shocks the conscience" and that a City policy or custom caused the deprivation of her mother's constitutional rights.[3]

---

[3] To the extent that plaintiff is able to amend her complaint to set forth a viable claim under § 1983, she may not reassert her claim for punitive damages. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) (finding "that considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials").