IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOMINIQUE HENDERSON, | : | CIVIL ACTION |
| as administratrix of the estate | : | NO. 12-2602 |
| of Yvette Henderson, deceased | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA | : | |

O'NEILL, J.                                                                 November 26, 2012

## MEMORANDUM

On July 23, 2012, I granted defendant City of Philadelphia's motion to dismiss and granted leave to amend to plaintiff Dominique Henderson, who asserts claims against defendant as administratrix of the estate of Yvette Henderson and in her own right as daughter of the decedent. Dkt. Nos. 5 and 6. Plaintiff filed an amended complaint[1] on August 10, 2012. Dkt. No. 7. Now before me are defendant's motion to dismiss plaintiff's amended complaint, Dkt. No. 10, and plaintiff's response thereto. Dkt. No. 11. I will grant defendant's motion for the reasons that follow.

## BACKGROUND

In her amended complaint, plaintiff alleges that her mother, Yvette Henderson, was having difficulty breathing on or about October 31, 2010. Am. Compl. ¶ 6. 911 was called and emergency medical personnel from the City of Philadelphia responded to 2531 West Harold Street, Philadelphia, PA. Id. at ¶¶ 6-7. Plaintiff asserts that upon their arrival at the house "two

---

[1] Although this complaint is titled "Amended Civil Action Complaint," it is actually the second amended complaint filed in this action. Plaintiff filed her initial complaint in the Court of Common Pleas for Philadelphia County. Defendant filed preliminary objections, after which plaintiff filed an amended complaint. Defendant removed the state court amended complaint to this Court and that complaint was dismissed on July 23, 2012.

EMS employees . . . took custody of Plaintiff's decedent, placed Plaintiff's Decedent in and/or on a bag and attempted to carry plaintiff's decedent out of the home." Id. at ¶ 7. Plaintiff claims that as her mother was being carried to the ambulance, "one and/or both of the [EMS personnel] dropped the Plaintiff's Decedent on her head with Plaintiff's Decedent's head landing on the concrete causing a subdural hemotoma [sic] resulting in death." Id. ¶ 8. Plaintiff's mother "was taken to the Temple University hospital where she was declared dead at 11:45 a.m." Id. at ¶ 13.

I granted "plaintiff leave to amend her § 1983 claim to the extent that she c[ould] allege sufficient facts to support a claim that the EMTs' conduct 'shocks the conscience' and that a City policy or custom caused the deprivation of her mother's constitutional rights." Dkt. No. 5 at ECF p. 9. In response, plaintiff now alleges that "[t]he City of Philadelphia EMS workers created a special relationship when they took custody of Plaintiff's decedent, restrained her liberty so as to render her unable to care for herself and at the same time failed to provide her basic human needs." Am. Compl. ¶ 14. She asserts that "[t]he City of Philadelphia EMS created danger and harm to the Plaintiff's decedent by taking her into custody, placing her in/on a bag, physically carried her in/on the bag and dropped her on her head deprived her of her life and liberty [sic]." Id. at ¶ 15. She alleges that "the Defendant EMS personnel actions [sic] in taking Plaintiff's decedent into custody, placing her in/on a bag, physically carrying her in/on the bag and dropping her on her head demonstrates a conscious shocking and willful disregard for the safety of Plaintiff's decedent." Id. at ¶ 18. She adds that "the injuries and losses described [in the amended complaint] were a direct and proximate result of the intentional, willfully wanton and/or conscious shocking actions of the Defendant, City of Philadelphia." Id. at ¶ 19.

Plaintiff's amended complaint also alleges that "pursuant to [its] customs, policies and

practices[,]" defendant "failed to act upon the reports on behalf of the decedent and with reckless indifference and/or intentionally took custody of Plaintiff's decedent, placed her in a position of danger and deprived her of life and liberty without due process of law . . . ." Id. ¶ 24. Finally, she alleges that defendant's "selective utilization and enforcement of the rules, regulations, custom, policies and practices regarding the aforementioned '9-1-1' and/or Emergency Medical System was the direct and proximate cause of the death of the Plaintiff's decedent." Id. ¶ 26.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556. The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that

3

the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678. The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679. The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679.

## DISCUSSION

Ordinarily, **"**there is no federal constitutional right to rescue services, competent or otherwise." Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst., 318 F.3d 473, 478 (3d Cir. 2003). There are two exceptions to this general rule: the special relationship exception[2] and the state-created danger exception. DeShaney v. Winnebago Cnty. Dep't of Soc.

---

[2] Despite plaintiff's allegation that "the City of Philadelphia EMS workers created a special relationship when they took custody of plaintiff's decedent," Am. Compl. ¶ 14, it does not apply here. The "special relationship" theory is a limited one that requires a custodial relationship in the nature of incarceration or institutionalization. Torisky v. Schweiker, 446 F.3d 438, 444-45 (3d Cir. 2006); see also Gray v. Univ. of Colo. Hosp. Auth., 672 F.3d 909, 924 (10th Cir. 2012) ("the restraint of liberty necessary to invoke substantive due process protection under the special relationship exception requires state action involving force, the threat of force, or a show of authority, with the intent of exercising dominion and control over the person").

4

Servs., 489 U.S. 189, 200-01 (1989). Plaintiff argues that the conduct alleged in her amended complaint "falls squarely within the state-created danger exception analysis established by the Court of Appeals" and that she "ought to be afforded the opportunity to conduct discovery on the matters averred in her complaint." Dkt. No. 11 at ECF p. 12. I disagree and find that the allegations in plaintiff's amended complaint are not sufficient to demonstrate that she has a "plausible claim for relief." Iqbal, 556 U.S. at 678.

The Court of Appeals has held:

> that cases predicating constitutional liability on a state-created danger theory have four common elements: (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor[s] acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; [and] (4) the state actors used their authority to create an opportunity that otherwise would not have existed [to cause harm].

Kneipp v. Tedder, 95 F.3d 1199, 1208 (3d Cir. 1996). "The failure to satisfy any one of the four elements 'obviates the need to analyze the other three elements' and defeats the state created danger claim overall." Yeremian v. Southeastern Pa. Transp. Auth., No. 11-06842, 2012 WL 440635, at *4 (E.D. Pa. Feb. 7, 2012), quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008).

In cases such as this where the state actor is acting with urgency a "shocks the conscience" standard rather than a "willful disregard" standard applies. Brown, 318 F.3d at 480 (holding that the "'conscience shocking' standard applies to the actions of emergency medical personnel – who [ ] have little time for reflection, typically making decisions in haste and under pressure"). To prevail on her state-created danger claim, plaintiff must demonstrate more than negligence or merely harmful behavior, which are "categorically" insufficient to shock the

5

conscience. Cnty. of Sacremento v. Lewis, 523 U.S. 833, 848-49 (1998). "In contrast, if the state actor unjustifiably intended that his conduct injure an individual, such conduct will likely rise to the level of conscience shocking." Andrews v. Monroe Cnty. Transit Auth., No. 11-1859, 2012 WL 1902573, at *6 (M.D. Pa. May 25, 2012) (citations omitted).

Plaintiff's amended complaint contains no factual allegations to support a finding that the involved emergency service personnel acted in a conscience shocking manner. She does not claim that they intentionally dropped plaintiff's decedent or that they otherwise acted with a purpose to harm her. Instead, plaintiff's amended complaint contains only "conclusory allegations which find no particularized support in the Amended Complaint to lend them any plausibility." Keys v. Carroll, No. 10-1570, 2012 WL 2884991, at *4 (M.D. Pa. July 13, 2012). She alleges that "the Defendant EMS personnel actions [sic] in taking Plaintiff's decedent into custody, placing her in/on a bag, physically carrying her in/on the bag and dropping her on her head demonstrates a conscience shocking and willful disregard for the safety of Plaintiff's decedent." Id. at ¶ 18. Without more, plaintiff's allegations are insufficient to demonstrate that the conduct of the involved emergency medical personnel was conscience shocking. Although the allegations in the amended complaint are tragic, they do not demonstrate a deprivation of plaintiff's mother's Fourteenth Amendment rights by defendant.

Further, even if plaintiff had sufficiently alleged conscience shocking conduct by the involved emergency medical personnel in her amended complaint, it would still fail, as it does not allege with any specificity a municipal policy, practice or custom that was the moving force behind the alleged violation of plaintiff's decedent's constitutional rights, as required under Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) ("[A] local government may

not be sued under § 1983 for an injury inflicted solely by its employees or agents."). Plaintiff asserts that "discovery *may* reveal that the City of Philadelphia *may* have a policy and/or custom in place of hiring and/or providing unlicensed and/or inadequately trained and/or inadequately equipped emergency medical service personnel." Dkt. No. 11 at ECF p. 10-11 (emphasis added). This speculation is not enough to allow plaintiff to overcome defendant's motion to dismiss. "[W]ithout some indication as to the circumstances underlying these claims, it would be improper to allow them to proceed any further in hopes of uncovering evidence of inappropriate conduct." Keys, 2012 WL 2884991, at *4.

I find, therefore, that plaintiff's amended complaint fails to state a viable claim against defendant under § 1983 and it will be dismissed.[3] An appropriate Order follows.

---

[3] A court may deny leave to amend a complaint with prejudice if the amendment would be inequitable or futile. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Plaintiff has already amended her complaint twice, once after defendant filed preliminary objections in the Court of Common Pleas and a second time in response to defendant's previous motion to dismiss in this Court. Plaintiff's most recent amendment failed to cure the deficiencies in her § 1983 claim and to allow further amendment would be inequitable to defendant who now has moved for dismissal of plaintiff's claims three times.